SESSIONS v. KENT *et al.*

**Mortgage:** FORECLOSURE BEGUN : PAYMENT TO ATTORNEY BY JUNIOR MORTGAGEE : AUTHORITY OF ATTORNEY : SUBROGATION. C., an attorney, had authority from K. to foreclose mortgages in Iowa for him at his discretion. In the exercise of this discretion, he began the foreclosure of two mortgages while they and the secured notes were yet in K.'s hands. While the actions were pending, plaintiff, a junior mortgagee, paid to C. the full amount of the two mortgages, with the interest and costs then accrued, and employed another attorney to proceed with their foreclosure. Afterwards K. sent the notes and mortgages to C., with knowledge that the actions had been commenced and were pending, and C. delivered them to plaintiff. *Held* that C. having had the authority to commence the suits, and having afterwards received the papers, the defect in his apparent right to receive payment when made, caused by the absence of the papers, was cured, and that the transaction was in the nature of an equitable assignment, entitling plaintiff to be subrogated to all the rights of K., and to prosecute the foreclosure cases by their original titles, but for his own use and benefit. (Compare *Harbach v. Colvin,* 73 Iowa, 638 ).

*Appeal from Polk Circuit Court.*—HON. JOSIAH GIVEN, Judge.

FILED, OCTOBER 23, 1888.

ON the nineteenth day of November, 1881, C. H. Gatch made and delivered to one Darius E. Kent, now deceased, two promissory notes for the sum of twelve hundred dollars each, and to secure the same executed two mortgages on real estate in the city of Des Moines. This property was afterwards sold by Gatch, and eventually became the property of D. W. Christy, who assumed and agreed to pay the notes and mortgages aforesaid. Christy having failed to pay the notes when they became due, two actions were brought in the circuit court of Polk county in the name of the mortgagee, for the collection of the notes and the foreclosure of the mortgages. After Christy acquired title

to the mortgaged property he executed and delivered to plaintiff a mortgage thereon to secure the payment of a note. After the commencement of the two foreclosure suits aforesaid, plaintiff agreed with Christy to advance the necessary money, and take up the Kent notes and mortgages, hold them as security for the money advanced, prosecute the suits to judgment, and sell the land thereunder. The suits had been commenced in the name of Kent by an attorney named Hugh R. Creighton. On the fourth day of March, 1885, while these suits were pending, plaintiff paid to Creighton, by a check which was subsequently paid by the Des Moines Bank on which it was drawn, the full amount then due on the notes, together with all costs and attorney's fees which had then accrued, and placed the cases in charge of another attorney for further proceedings. When Creighton received payment as aforesaid he did not have the notes and mortgage in his possession, but he afterwards received them from Kent, and delivered them to plaintiff. The two cases were continued in the name of Kent, and judgment and decree of foreclosure was rendered in each on or about the eleventh day of May, 1885. Plaintiff was a defendant in each of those suits, and in one he filed a cross-petition, in which he demanded judgment against Christy for the amount of his note to plaintiff, and the foreclosure of plaintiff's second mortgage. Judgment was rendered in favor of this plaintiff, and against Christy, for four hundred and twenty dollars and an attorney's fee, and a decree foreclosing the mortgage. Special executions were issued in the two cases; and on the sixth day of July, 1885, the mortgaged premises were offered for sale thereunder, and plaintiff bid for the premises amounts sufficient to satisfy the executions, and the bids were accepted. But when plaintiff tendered, in discharge of his bids, receipts in full for the judgments, and money to satisfy all costs, the sheriff refused to accept the tender, on the ground that plaintiff was not the owner of record of the judgments, and held the sales already made of no effect, and adjourned the sales for three days. The plaintiff

then commenced this action, in which he asks that his ownership of the judgments be established; that his bids be held to be valid; and that the sheriff be compelled to issue to him the proper certificates of sale. The defendants deny that decedent, Darius E. Kent, ever authorized a sale of the notes and mortgages in controversy to plaintiff, and deny that decedent ever received any money therefor, and deny that the suits were prosecuted to judgment for the benefit of plaintiff, and deny that he has any interest in them. They further allege that plaintiff is estopped from claiming the ownership of the judgments, for the reason that he was a defendant in the suits in which they were rendered, and that they established the ownership of decedent as against plaintiff. They also claim that the payment to Creighton was insufficient, because not made with money. After a trial on the merits, the circuit court rendered a decree in favor of plaintiff as prayed. The defendants, executors of the estate of decedent, appeal.

*Willard & Fletcher*, for appellants.

*Barcroft & Bowen*, for appellee.

ROBINSON, J.—I. The evidence shows that Creighton had acted as a loan-agent for a number of years. It was his custom to receive applications for loans from borrowers, and forward them to the firm of Smith & Tennant, at Westfield, N. Y., by whom persons were found to furnish the money necessary to make the loans. Darius E. Kent was one of the persons so found, and he furnished money for a large number of loans made during a period of time which commenced in the year 1879, and extended into 1885. Much evidence has been offered to show that Creighton acted as the agent of Kent in making these loans. A considerable portion of this is incompetent; but, if all of it is considered, it fails to show that Creighton was the agent of any one but the borrower and Smith & Tennant in making most of the loans for which Kent furnished the money. If plaintiff

succeeds in this case, it must be because Creighton was in fact authorized to receive the payment made to him, or because of the subsequent act of Kent. It appears that Kent treated Creighton as his agent for some purposes. He requested his services in regard to the payment of taxes, the renewal of policies of insurance, the extension of loans, and the payment of money. Some of these letters were such as the lender of money might write to the agent of the borrower, and did not necessarily bind the writer as a principal. But others were of a nature which excluded the idea that they were written to the agent of any one but Kent. This is especially true of some which related to the foreclosure of mortgages. They show that Kent left it to Creighton to decide when it was necessary or proper to foreclose. The deposition of Kent shows that Creighton acted as his attorney in foreclosing and collecting the mortgages which were foreclosed in Iowa before Creighton left,— seven in all. Kent states that in most, if not all, of these cases, the papers were in his possession when the actions were commenced, and that they were afterwards sent to Creighton. It appears that the two cases in question were commenced without the knowledge of Kent; that Creighton wrote for the notes and mortgages in April, 1885, but without stating that he had received payment thereon; and that they were forwarded to him by Kent, or at his request, on the twenty-second day of that month. They were received by Creighton on the twenty-fifth day of April, and were turned over to plaintiff, as already stated. In addition to the evidence already noticed, a witness testified that Kent told him that Creighton was doing his business in Des Moines, and made his collections. The evidence satifies us that Creighton was duly authorized by Kent to act for him in his foreclosure proceedings in Iowa, and to collect money in such cases. It is said that Creighton was not authorized to receive payment for the notes in question, for the reason that at the time he received it he had not been authorized to collect the notes nor to foreclose the mortgages. The answer to this is that the matter of commencing

actions to enforce the collection of Kent's paper seems to have been left to Creighton's decision, and his action in this case was ratified by sending the papers to him with knowledge that proceedings to foreclose them had been commenced and were then pending. But it is said that the papers were sent to be foreclosed, and for no other purpose. Conceding that they were sent for that purpose, in the absence of instructions to the contrary, Creighton would have authority to collect them, and to receive from any one who had the right to pay, any money which was due on them. If Kent had refused to send the papers when requested, the claim of appellants would be better founded; but when they were sent they gave to Creighton the authority to do just what he had done, and his turning over the papers was a completion of the transaction with plaintiff. Creighton having had authority to commence the suit, and having afterwards received the papers, the defect in his apparent right to receive the payment when it was made, caused by the absence of the papers, was cured, and plaintiff was justified in treating the matter as fully closed, so far as it related to Kent. The transaction was not a sale and purchase of the claims of Kent, but was in the nature of an equitable assignment. Plaintiff, as a junior lien-holder, had a right to pay the amount due to Kent, and by virtue of that payment was entitled to be subrogated to his rights. Code, sec. 3323 ; *Harbach v. Colvin*, 73 Iowa, 638 ; 1 Jones, Mort. sec. 874 ; 2 Pom. Eq. Jur. sec. 798 ; 3 Pom. Eq. Jur. sec. 1211.

II. The other questions raised by appellants are similar to those determined in *Harbach v. Colvin, supra.* In our opinion, the decree of the circuit court is correct.

AFFIRMED.